**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TAMAR EVANS,**

**Petitioner,**

**CASE NO. 2:06-cv-188**
**JUDGE HOLSCHUH**
**MAGISTRATE JUDGE ABEL**

**v.**

**ALAN LAZAROFF,**

**Respondent.**

**ORDER and**
**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.

This action involves petitioner's June 18, 2004 guilty plea in the Cuyahoga Court of Common Pleas to aggravated robbery, voluntary manslaughter, carrying a concealed weapon, and three counts of felonious assault with firearm specifications. Petitioner waived his right to appeal as a part of his plea agreement; however, approximately one year after he was sentenced he filed a motion for delayed appeal, which was denied. Petitioner did not timely appeal the appellate court's decision, and his motion for delayed appeal was denied by the Ohio Supreme Court.

In this habeas corpus action, petitioner asserts that he was denied the right to appeal and the effective assistance of counsel, that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004) and that application of *State v. Foster*, 109 Ohio St.3d 1 (2006), is unconstitutional. It is the position of the respondent that this action is time barred under 28 U.S.C. §2244(d). For the reasons that follow, the Magistrate Judge concludes that, even assuming this action is timely, petitioner's claims are procedurally defaulted, and therefore **RECOMMENDS** that this action be **DISMISSED**.

Petitioner's request for an evidentiary hearing is **DENIED**.

## I. PROCEDURAL HISTORY

Petitioner was indicted by the September 2003 term of the Cuyahoga County grand jury on one count of aggravated robbery in violation of O.R.C. §2911.01, two counts of aggravated murder in violation of O.R.C. §2903.01, one count of murder in violation of O.R.C. 2903.02, and one count of carrying a concealed weapon in violation of O.R.C. §2923.12, with specifications. Exhibit 1 to Return of Writ. Petitioner was also indicted on four counts of felonious assault, in violation of 2903.11, with firearm specifications. Exhibit 2 to Return of Writ.

On June 18, 2004, while represented by counsel and pursuant to a plea agreement, petitioner pleaded guilty in Case No. CR-442218 to aggravated robbery with a firearm specification, involuntary manslaughter with a firearm specification, and carrying a concealed weapon; he pleaded guilty in Case No. CR-442161 to three counts of felonious assault with firearm specifications. He was sentenced to an aggregate term of thirty-five years incarceration in both cases. Exhibits 5 and 6 to Return of Writ. Petitioner never timely appealed.

Almost one year later, on May 13, 2005, Evans filed a motion for delayed appeal. He asserted in his motion for delayed appeal that he was unaware that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Exhibit 8 to Return of Writ. On June 27, 2005, the appellate court denied petitioner's motion for delayed appeal and dismissed the appeal. Exhibits 9 and 10 to Return of Writ. Petitioner never filed a timely appeal of the appellate court's decision to the Ohio Supreme Court. Instead, on December 7, 2005, he filed a motion for delayed appeal pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a). Exhibits 11 and 12 to Return of Writ. On January 24, 2006, the Ohio Supreme Court denied the motion for delayed appeal and dismissed the

appeal. Exhibit 13 to Return of Writ.

On March 13, 2006, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Whether appellant was deprived of his right to appeal as of right in a delayed appeal manner, pursuant to Appellate Rule 5, in violation of the Fourteenth Amendment to the United States Constitution.
>
> 2. Whether the trial court abused its discretion by failing to follow through with the appointment of counsel and advising appellant of his appeal as of right for the purpose of timely filing an appeal as of right [sic] thereby violating appellant's right to due process and equal protection of the law in violation of the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.
>
> a. Whether the sentence imposed in this case is contrary to law and violates... *Blakely v. Washington*, 542 U.S. 296 (2004).
>
> b. Whether the trial court erred by ordering the defendant to serve consecutive sentences without stating on the record its reasons for making the required findings.
>
> c. Whether plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.
>
> d. Whether the trial court abused its discretion by failing to follow through with the appointment of counsel and advising appellant of his appeal as of right.
>
> e. Whether defendant was deprived of his Sixth Amendment right to effective assistance of counsel where trial counsel failed to discuss the facts of the case with defendant, failed to interview potential witnesses, failed to follow-up potentially exculpatory evidence, failed to present any mitigation evidence at the sentencing hearing and failed to advise defendant of his appellate rights or otherwise timely file a.. notice of appeal.

On May 3, 2006, petitioner filed a motion to amend the petition, Doc. No. 4, which motion has been

granted, *see* Doc. No. 10 , to include the following additional claims:

> 3. The nature of the remedy required for a defendant sentenced under an unconstitutional statute.
>
> 4. The *ex post facto* and due process implications of modifying a previously imposed sentence so that it no longer complies with the sentencing statutes in effect when the offense was committed or in re-sentencing defendant under a different, and more onerous statute.
>
> 5. The application of the rule of lenity to a court's interpretation of a sentencing statute.
>
> 6. Whether increased sentences for defendants after a successful appeal under *Blakely* creates a presumption of vindictiveness.
>
> 7. Whether the judicial repeal of a constitutional statutory provision constitutes an unconstitutional violation of the principle of separation of powers.

It is the position of the respondent that this action is barred by the one-year statute of limitations under 28 U.S.C. §2244(d), and that petitioner's claims are procedurally defaulted or without merit.

## II. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 imposed a one-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**A. CLAIM ONE**

In claim one, petitioner asserts that the Ohio Court of Appeals improperly denied his motion for delayed appeal. In *DiCenzi v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit held that the statute of limitations did not begin to run under 2244(d)(1)(D) that a claim until the date that the appellate court denied the motion for delayed appeal, as that is the date of the factual predicate for such a claim. The Ohio Court of Appeals denied Evans's motion for a delayed appeal on June 27, 2005. Since petitioner filed the instant habeas corpus petition on March 13, 2006, and signed the petition on March 2, 2006, claim one therefore is timely. As noted by respondent, *Return of Writ, at 21*, however, the claim nonetheless is procedurally defaulted. *See discussion, below*.

**B. CLAIMS TWO THROUGH SEVEN**

In claims two through seven, petitioner asserts that he improperly was never advised of his right to appeal, that he was denied the effective assistance of counsel, that his sentence violates

*Blakely,* and that application of *State v. Foster*, 109 Ohio St.3d 1 (2006) is unconstitutional.[1] These claims relate to events that took place at the time of petitioner's guilty plea and sentencing. *See DiCenzi v. Rose, supra*, 452 F.3d at 469. Evans was sentenced on June 18, 2004. He had 30 days to file an appeal. When he failed to do so, his conviction on July 18, 2004. *Searcy v. Carter,* 246 F.3d 515, 518-19 (6 Cir.2001); *Marcum v. Lazaroff,* 301 F.3d 480, 481 (6 Cir.2002); Ohio App.R. 4(A). The statute of limitations ran for 299 days until May 13, 2005, when petitioner filed a motion for delayed appeal. The statute of limitations then was tolled under 28 U.S.C. §2244(d)(2) from May 13, 2005, until August 11, 2005, forty-five days after the state appellate court's June 27, 2005, denial of petitioner's motion for delayed appeal, when the time period expired to file a timely appeal to the Ohio Supreme Court. The statute of limitations then began to run again, and expired sixty-six days later, on October 16, 2005. Petitioner's December 7, 2005, motion for delayed appeal in the Ohio Supreme Court did not affect the running of the statute of limitations, since the motion was filed after the statute of limitations had already expired. "The tolling provision does not... 'revive' the limitations period (*i.e.,* restart the clock at zero); it can only serve to pause a clock that has not yet fully run ." *Vroman v. Brigano,* 346 F.3d 598, 601 (6 Cir.2003), citing *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y.1998); *Winkfield v. Bagley,* 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003)(same). Therefore, the petition is untimely filed as to the remainder of petitioner's claims. The instant petition was not signed until March 2, 2006, nor filed

---

[1] In *State v. Foster*, 109 Ohio St.3d 1 (2006), the Ohio Supreme Court held that portions of Ohio's sentencing statutes were unconstitutional under *Blakely v. Washington, supra,* 542 U.S. at 296, and excised the unconstitutional provisions of its sentencing statutes in accordance with the United States Supreme Court's remedial action in *United States v. Booker*, 543 U.S. 234, 764 (2005). The constitutionality of *State v. Foster* is not at issue here, however, since petitioner has was never re-sentenced under the dictates of *State v. Foster.*

until March 13, 2006.

Petitioner nonetheless contends that his claims are timely because he did not know about and was not advised of his right to appeal, or of the time limits for filing an appeal. Petitioner argues that the trial court's failure to advise him about his right to appeal constitutes an "unconstitutional State-created impediment" to the filing of his habeas corpus petition under 28 U.S.C. §2244(d)(1)(B). *Traverse, at 5*. Alternatively, he contends that the statute of limitations did not begin to run until he could have discovered with due diligence that he had a right to appeal under 28 U.S.C. §2244(d)(1)(D). *Id.*

The transcript of petitioner's guilty plea indicates that his sentence of 35 years was imposed pursuant to the terms of a negotiated agreed sentence and guilty plea. Exhibit 14 to Return of Writ, *Transcript*, at 2-5; 18. Petitioner agreed to waive his right to appeal pursuant to the terms of his guilty plea. He said that he had discussed the consequences of his guilty plea with counsel.

> COURT: One final thing. You discussed with your attorney the consequences of your plea, correct?
>
> DEFENDANT: Yes.
>
> COURT: You discussed with your attorneys the fact that one of the conditions of [the] plea is that you would waive any right to an appeal in this case.
>
> Do you understand that?
>
> DEFENDANT: Yes.
>
> COURT: That is, you would agree to waive any grounds for an appeal, including any allegation later on that your attorneys didn't do what they were supposed to do. Do you understand that?

DEFENDANT: Yes.

*Id*., at 28-29; *see also* O.R.C. 2953.08, which provides:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge....

*Id.*

Petitioner does not indicate in what manner his agreement to waive his right to appeal constitutes a state created impediment within the meaning of 28 U.S.C. §2244(d)(1)(B).

> To invoke 28 U.S.C. § 2244(d)(1)(B), a petitioner must establish that: "(1) he was prevented from filing a petition, (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell,* 334 F.3d 433, 436 (5th Cir.2003).

*Collier v. Dretke*, unpublished, 2004 WL 1585903 (N.D. Texas July 13, 2004). Further,

> Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition." *Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D.Mass.2001).... Petitioner has not alleged that his court appointed counsel erroneously advised him that he had no federal remedies. No connection has been established between [petitioner's agreement to waive his right to appeal] and Petitioner's ability to file a federal habeas petition. *See Winkfield v. Bagley,* 2003 WL 21259699, 66 Fed. Appx. 578 (6th Cir. May 28, 2003) (unpublished).

*Id.; see also Waldron v. Jackson,* 348 F.Supp.2d 877, 884-86 (N.D. Ohio 2004)(ineffective assistance of counsel in failing to file timely appeal after being requested to do so constituted state created impediment to filing a timely habeas corpus petition.) Because no unconstitutional state action prevented petitioner from filing this habeas corpus petition, petitioner's argument that this action is timely under 28 U.S.C. §2244(d)(1)(B) fails.

Petitioner also alleges, however, that his guilty plea was not knowing, intelligent or voluntary, and that his agreement to waive his right to appeal was invalid in view of *Blakely v. Washington, supra*, 542 U.S. at 296, issued on June 24, 2004, just six days after petitioner pleaded guilty and was sentenced in this case. *See Traverse*. As discussed, petitioner contends that his claims are timely under 28 U.S.C. §2244(d)(1)(D), because the statute of limitations did not begin to run until the date on which he could have discovered with due diligence that he could appeal his sentence as invalid in view of the Supreme Court's decision in *Blakely* despite his agreement not to do so.

The Court notes that petitioner's argument that his guilty plea was not knowing, intelligent or voluntary, or that he is no longer bound by its terms in view of the Supreme Court's subsequent decision in *Blakely* is not persuasive. The United States Court of Appeals for the Sixth Circuit rejected this same argument in *United States v. Bradley,* 400 F.3d 459 (6th Cir. 2005): ,

> Having voluntarily and knowingly bargained for a decrease in the number of counts charged against him and for a decreased sentence, Bradley cannot now extract two components of that bargain-his agreement to be sentenced under the then-mandatory Guidelines and his agreement to waive his right to appeal-on the basis of changes in the law after that bargain was struck. *See, e.g.*, *United States v. Calderon,* 388 F.3d 197 (6th Cir.2004) (enforcing waiver of right to appellate review); *United States v. Sykes,* 292 F.3d 495 (6th Cir.2002) (enforcing waiver of right to appellate review in the context of an *Apprendi* challenge); *United States v. Allison,* 59 F.3d 43 (6th Cir.1995) (enforcing waiver of right to appellate review); *cf. United States v. Rubbo,* 396 F.3d 1330, 1334 (11th Cir.2005) ( "Plea bargains ··· are like contracts and should be interpreted in accord with what the parties intended.").
>
> In reaching this conclusion both with respect to Bradley's agreement that he would be sentenced under the Guidelines and his waiver of the right to appeal, we join four other circuits that have reached similar conclusions in the aftermath of *Booker*. *See United States v. Parsons,* 396 F.3d 1015, 1017-18 (8th Cir.2005) ("[T]here would be

> no merit to an argument that [the defendant] is entitled to resentencing under advisory Guidelines in light of *Booker.* He expressly agreed as part of his plea agreement that he would be sentenced under the Guidelines."); *United States v. Fleischer,* No. 04-3911, 120 Fed.Appx. 865, 866-67, 2005 U.S.App. LEXIS 1799, at *3-4 (2d Cir. Feb. 3, 2005) (unpublished) (rejecting the defendant's argument that "the waiver provision of his plea agreement is inoperative because it was entered before the Supreme Court clarified the Sixth Amendment's application to the federal Sentencing Guidelines"); *Rubbo,* 396 F.3d at 1335 (observing that "the right to appeal a sentence based on *Apprendi/Booker* grounds can be waived in a plea agreement" and that "[b]road waiver language covers those grounds of appeal"); *United States v. Sahlin,* No. 04-1324, 399 F.3d 27, 2005 U.S.App. LEXIS 3018, at *8 (1st Cir. Feb. 22, 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea.").
>
> Nor do we think that this approach will operate unfairly in practice. As *Booker* makes sentencing ranges under the Guidelines advisory both with respect to the peak and valley of each range, the ability to seek reasoned variations from these ranges is as apt to be a sword as a shield for the criminal defendant. For Bradley has given us no explanation why a rule permitting criminal defendants to abandon their agreement to be sentenced under the then-mandatory Guidelines or their agreement not to appeal a sentence in the aftermath of *Booker* would not allow the government to do the same.

*Id.*, at 465-66.

That said, in *DiCenzi v. Rose, supra*, the United States Court of Appeals for the Sixth Circuit held that, where the defendant pleaded guilty but was not advised of his right to appeal, the statute of limitations does not begin to run under 28 U.S.C. §2244(d)(1)(D), until the petitioner, acting with due diligence, could have discovered of his right to appeal:

> DiCenzi argues that... the statute should not have started running until August 2001 when he was informed by the Public Defender that he had the right to an appeal.
>
> Of course, during all this time, had DiCenzi merely inquired of a court or a public defender regarding whether he had the right to an

appeal, he could have found out that he did. He argues, however, that it is not reasonable to expect a defendant who pleaded guilty to be aware of mandatory statutory appeal rights from the sentence imposed, especially when neither the court nor his attorney at sentencing informed him of any such rights. In support of this argument, DiCenzi cites *Granger v. Hurt,* 90 Fed.Appx. 97, 99-101 (6th Cir. Jan.23, 2004) (unpublished opinion), wherein an Ohio prisoner (Granger) had been told by his attorney that the attorney would appeal Granger's conviction. The attorney then failed to do so, and Granger did not discover this failure until he called the attorney to check on the status of his appeal two months after the deadline for filing the appeal had passed. The district court held that the proper date for starting the statute of limitations was the deadline for filing a notice of appeal of his sentence, since Granger *could* have discovered his attorney's failure on that date. We reversed, holding that the district court's decision "ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal," and noting that § 2244(d)(1)(D) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Granger,* 90 Fed.Appx. at 100 (citing *Wims v. United States,* 225 F.3d 186, 190 n. 4 (2d Cir.2000)); *see also, e.g., Moore v. Knight,* 368 F.3d 936, 940 (7th Cir.2004) (evaluating a prisoner's due diligence in investigating trial errors, and noting the difficulties inherent in the prison environment); *Aron v. United States,* 291 F.3d 708, 712 (11th Cir.2002) (same). Finding that "the two months that Granger waited before inquiring about his appeal was, under the circumstances, not unreasonable," we held that Granger had exercised due diligence and thus that the AEDPA statute of limitations began running on the date he learned from his attorney that the appeal had not been filed. *Granger,* 90 Fed.Appx. at 100.

Accordingly, as noted by the Second Circuit,

The proper task in a case such as this one is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal]. After that date, petitioner was entitled to further delay (whether in actually making the discovery, or in acting on a previously made discovery, or for any other reason whatsoever), so long as he filed his petition within one year of the date in which the discovery would have been made in the exercise of due diligence. *Wims,* 225 F.3d at 190.

***

> [T]he date on which the limitations clock began to tick is a fact-specific issue the resolution of which depends, among other things, on the details of [a defendant's] post-sentence conversation with his lawyer and on the conditions of his confinement in the period after [sentencing]. *Wims,* 225 F.3d at 190-91 (citing *Easterwood v. Champion,* 213 F.3d 1321, 1323 (10th Cir.2000) (taking into account "the realities of the prison system" in determining due diligence)).

*Id*., at 469-471. The case was remanded the case to the District Court for a determination of when the defendant learned of his right to appeal, and "when a reasonably diligent person in DiCenzi's position could be reasonably expected to learn of his appeal rights." *Id*., at 471, citing *Wims,* 225 F.3d at 190-91.

*DiCenzo* is not controlling here. The plea agreement demonstrates that Evans knew he had a right to appeal but chose not to exercise it to obtain dismissal of some charges and an agreed setnence. Even assuming, however, that the instant petition is timely, all of petitioner's claims are procedurally defaulted, in any event.

## III. PROCEDURAL DEFAULT

Respondent argues that petitioner Evans waived his right to raise any claims in federal habeas corpus when he waived his right to appeal in the plea agreement. Alternatively, respondent argues that the claims were waived when Evans failed to file a timely appeal from the Ohio Court of Appeals' decision denying his motion for leave to appeal.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but

still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that the state appellate court improperly denied his motion for delayed appeal. In claim two, petitioner asserts that the trial court improperly failed to advise

petitioner of his right to appeal and appoint counsel for an appeal; that his sentence violates *Blakely;* that he was denied the effective assistance of counsel due to his attorney's failure to advise him of his right to appeal or file a timely notice of appeal, failure to discuss the evidence against him, interview witnesses, follow up with "potentially exculpatory evidence," and failure to present mitigation evidence. *See Petition*. In claims three through seven, petitioner asserts that Ohio's remedy under *State v. Foster, supra*, is unconstitutional or otherwise improper.

Respondent contends that petitioner waived his right to raise all of the foregoing issues, when he explicitly waived his right to appeal his sentence pursuant to the terms of his guilty plea and under O.R.C. 2953.08(D) by agreeing to the joint recommendation of nine years.

> Appellate review of a negotiated felony sentence is governed by R.C. 2953.08(D), enacted as part of Senate Bill 2, which provides in part:
>
> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge....
>
> ***
>
> An appellate court may not review such a jointly recommended felony sentence unless it finds that the sentence is not authorized by law.

*State v. Stacy,* 1999 WL 29075 (Ohio App.12 Dist. 1999); *see also State v. Lentz*, 2003 WL 576646 (Ohio App.2 Dist. February 28, 2003):

> [T]he terms of R.C. 2953.08(D) confer no authority on the trial court. That section simply bars a right of appeal otherwise conferred by R.C. 2953.08(A); that is, one based on the grounds in subparagraphs (1)-(6) of that section "when the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." *Id.*
>
> It is undisputed that Lentz's sentence satisfied each of the

> requirements specified in 2953.08(D).“A sentence is authorized by law as long as the prison term imposed does not exceed the maximum term authorized for the offense.” *State v. Engleman* (Aug. 18, 2000), Hamilton App. No. C-990845, discretionary appeal not allowed (2000), 90 Ohio St.3d 1481, 738 N.E.2d 1254. Lentz's sentence does not exceed the statutory range, therefore, it is authorized by law. Additionally, the trial court made sure that Lentz understood the plea agreement and that his decision to plea was voluntary. Finally, the trial court imposed the exact sentence contemplated by both parties in the plea agreement. Both parties stipulated that Lentz was to receive a sentence of two ten-year sentences to be served consecutively. By sentencing Lentz in accord with the terms of the plea agreement, the trial court imposed a sentence that had been recommended jointly by the defendant and the prosecution.
>
> The foregoing facts would trigger the provisions of R.C 2953.08(D) to bar any appeal taken pursuant to R.C. 2953.08(A). It is unclear whether Lentz's contentions concerning the lack of finding and reasons fall within any of those grounds. However, if they do, R.C. 2953.08(D) bars the right of appeal conferred.
>
> If Lentz's contentions are instead viewed as an appeal taken pursuant to the general provisions of R.C. 2953.02, then R.C. 2953.08(D) has no effect. However, in that event Lentz's agreement to the jointly recommended sentence the court imposed waives his right to argue on appeal that the court erred when it imposed the recommended sentence absent the findings and reasons that R.C. 2929.19(B)(2)(c) and R.C. 2929.14(C) might require. It is well-settled that a party may not argue that the party was prejudiced by error which the party induced the trial court to commit.

*Id.; State v. White*, 2003 WL 22451372 (Ohio App. 9 Dist. October 6, 2003)(same). Moreover, petitioner Evans failed to file a timely appeal of the state appellate court’s June 27, 2005 decision denying his motion for delayed appeal, and his December 7, 2005 motion for delayed appeal pursuant to Ohio Supreme Court Rule of Practice II, Section 2(A)(4)(a) was summarily denied by the Ohio Supreme Court. The United States Court of Appeals for the Sixth Circuit has held that the Ohio Supreme Court’s denial of a motion for delayed appeal under such circumstances constitutes an adequate and independent state ground to preclude federal habeas corpus review. *Bonilla v.*

*Hurley***,** 370 F.3d 494, 497 (6th Cir. 2004):

> This case turns upon whether the Ohio Supreme Court entry denying Bonilla's motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of Bonilla's habeas corpus petition. Upon examination of the Ohio Supreme Court Rules, we conclude that it does. The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits . . . .
>
> We therefore conclude that Bonilla's grounds for relief have been procedurally defaulted. *See Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir.2000). Bonilla failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup.Ct. R. II, Section 2(A)(4). Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar. *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir.1996).

*Id.* This Court therefore likewise concludes that petitioner has procedurally defaulted all of the claims he presents for federal habeas corpus review.

Petitioner can still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges. Petitioner has failed to establish either cause or prejudice for his procedural default of claims one through seven.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the instant petition for a writ of habeas corpus be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

*de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel
United States Magistrate Judge